UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PACIFIC BIOSCIENCES OF CALIFORNIA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 17-cv-01353-LPS |
| | ) | |
| OXFORD NANOPORE TECHNOLOGIES, INC., | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

## <u>PACBIO'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS ONT'S COUNTERCLAIMS FOR FAILURE TO STATE A CLAIM</u>

FARNAN LLP
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market St., 12th Floor
Wilmington, DE 19801
(302) 777-0300
(302) 777-0301 (Fax)
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Plaintiff*

OF COUNSEL:

Edward R. Reines
Derek C. Walter
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065
(650) 802-3000

June 15, 2018

## <u>TABLE OF CONTENTS</u>

**Page**

**Contents**

I.  NATURE AND STAGE OF THE PROCEEDINGS ...........................................................1

II.  SUMMARY OF THE ARGUMENT .................................................................................1

III.  STATEMENT OF FACTS ................................................................................................2

IV.  ARGUMENT ....................................................................................................................2

    A.  ONT Fails To Adequately Plead Inequitable Conduct ...........................................2

        1.  ONT Has Not Adequately Pled Inequitable Conduct In The 056 Patent Prosecution.........................................................................................3

        2.  ONT Fails To Adequately Plead That Material Misrepresentations Were Made During The '323 Patent Prosecution .......................................7

    B.  ONT Fails to Adequately Plead *Walker Process* Claims.......................................9

        1.  ONT Fails To Plausibly Allege The Fraud Component Of A *Walker Process* Claim.................................................................................9

        2.  ONT Fails to Plausibly Define Its Overly Narrow Relevant Product Market And Monopoly Power ..................................................................10

        3.  ONT Fails to State a Section 2 Claim Based On "Cumulative Acts"........13

    C.  ONT Has Not Plausibly Pled False Advertising Under The Lanham Act.............15

        1.  ONT Has Not Plausibly Pled False Advertising Based On Dr. Hunkapiller's Statements ........................................................................15

        2.  ONT Has Not Plausibly Pled False Advertising Based On The White Paper Or Dr. Korlach's Statements ................................................17

    D.  ONT Fails To Adequately Plead False Advertising Under §17500 ......................18

    E.  ONT Fails To Adequately Plead Unfair Competition Under § 17200 ..................19

V.  CONCLUSION................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Labs. v. Teva Pharm. USA, Inc.*,
  432 F. Supp. 2d 408 (D. Del. 2006)...................................................................... 13

*Accenture Glob. Servs. GMBH v. Guidewire Software Inc.*,
  581 F. Supp. 2d 654 (D. Del. 2008)................................................................. 15, 16

*Akzo N.V. v. U.S. Int'l Trade Comm'n*,
  808 F.2d 1471 (Fed. Cir. 1986) .............................................................................. 7

*Asahi Glass Co. v. Pentech Pharm. Inc.*,
  289 F. Supp. 2d 986 (N.D. Ill. 2003) ..................................................................... 9

*Bayer Cropscience AG v. Dow Agrosciences LLC*,
  2012 WL 1253047 (D. Del. Apr. 12, 2012).............................................................. 4

*Boehringer Ingelheim Int'l GmbH v. Barr Labs., Inc.*,
  592 F.3d 1340 (Fed. Cir. 2010) .............................................................................. 6

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999) .......................................................................................... 19

*ChemFree Corp. v. J. Walter, Inc.*,
  No. CIV 104-CV-3711-JTC, 2008 WL 3884365 (N.D. Ga. June 10, 2008)............................. 3

*Chip-Mender Inc. v. Sherwin-Williams*,
  No. C. 05-3465 PJH, 2006 WL 13058 (N.D. Cal. Jan. 3, 2006) ............................. 19

*Crossroads Cogeneration Corp. v. Orange & Rockland Utils.*,
  159 F.3d 129 (3d Cir. 1998) .................................................................................. 12

*Denbicare U.S.A., Inc. v. Toys R Us, Inc.*,
  84 F.3d 1143 (9th Cir. 1996) ................................................................................. 19

*E.R.R. Pres. Conf. v. Noerr Motor Freight, Inc.*,
  365 U.S. 127 (1961)................................................................................................ 15

*Ethyl Molded Prods. Co. v. Betts Packaging, Inc.*,
  CIV. A. No. 85-111, 1988 WL 122168 (E.D. Ky. Sept. 2, 1988) ............................. 8

*Exergen Corp. v. Brooklands Inc.*,
   290 F. Supp. 3d 113 (D. Mass. 2018) .................................................. 7

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
   575 F.3d 1312 (Fed. Cir. 2009) .................................................. 2, 5

*Farmers Ins. Exch. v. Super. Ct.*,
   2 Cal. 4th 377 (1992) .................................................. 20

*Gilead Scis., Inc. v. Abbott Labs., Inc.*,
   No. CV 13-2034-GMS, 2015 WL 1191129 (D. Del. Mar. 13, 2015) .................................... 19

*Heartland Payment Sys., Inc. v. Mercury Payment Sys.*, LLC,
   No. C 14-0437 CW, 2015 WL 3377662 (N.D. Cal. Feb. 24, 2015) ........................................ 19

*Ingels v. Westwood One Broad. Servs., Inc.*,
   129 Cal. App. 4th 1050 (Cal. Ct. App. 2005) .................................................. 20

*Insite Vision Inc. v. Sandoz, Inc.*,
   783 F.3d 853 (Fed. Cir. 2015) .................................................. 7

*Japan Telecomm, Inc. v. Japan Telecomm Am. Inc.*,
   287 F.3d 866 (9th Cir. 2002) .................................................. 18

*Johnson & Johnson–Merck Consumer Pharm. Co. v. Rhone–Poulenc Rorer Pharm., Inc.*,
   19 F.3d 125 (3d Cir. 1994) .................................................. 15

*L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*,
   114 F. Supp. 3d 852 (N.D. Cal. 2015) .................................................. 19

*Leviton Mfg. Co. v. Univ. Sec. Instr., Inc.*,
   606 F.3d 1353 (Fed. Cir. 2010) .................................................. 6

*LifeScan, Inc. v. Home Diagnostics, Inc.*,
   103 F. Supp. 2d 379 (D. Del. 2000) .................................................. 7

*Max Daetwyler Corp. v. Input Graphics, Inc.*,
   608 F. Supp. 1549 (E.D. Pa. 1985) .................................................. 16

*MGM Well Servs., Inc. v. Mega Lift Sys., LLC*,
   534 F. Supp. 2d 705, 712 (S.D. Tex. 2007) .................................................. 5

*Mycone Dental Supply Co. v. Creative Nail Design, Inc.*,
   No. 11-4380, 2013 WL 3216145 (D.N.J. June 24, 2013) .................................................. 4

*Newsom v. Countrywide Home Loans, Inc.*,
  714 F. Supp. 2d 1000 (N.D. Cal. 2010) ................................................................ 20

*Nobelpharma AB v. Implant Innovations, Inc.*,
  141 F.3d 1059 (Fed. Cir. 1998) .......................................................................... 10

*Optium Corp. v. Emcore Corp.*,
  603 F.3d 1313 (Fed. Cir. 2010) ............................................................................ 4

*Oracle Corp. v. DrugLogic, Inc.*,
  No. C 11-00910 JCS, 2011 WL 5576267 (N.D. Cal. Nov. 16, 2011) ....................... 5

*Pacific Biosciences of California, Inc. v. United States International Trade Commission*,
  No. 18-1587 (Fed. Cir. filed February 16, 2018)................................................... 14

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*,
  998 F.2d 1192 (3d Cir. 1993) .............................................................................. 10

*Pixion, Inc. v. Citrix Sys., Inc.*,
  No. C 09-03496 SI, 2012 WL 762005 (N.D. Cal. Mar. 8, 2012) .............................. 5

*Premier Comp Sol'ns LLC v. UPMC*,
  163 F. Supp. 3d 268 (W.D. Pa. 2016).................................................................... 10

*Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*,
  508 U.S. 49 (1993)............................................................................................ 13

*Reybold Grp. of Cos., Inc. v. Does 1-20*,
  323 F.R.D. 205 (D. Del. 2017)............................................................................ 16

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
  632 F. Supp. 2d 362 (D. Del. 2009)................................................................. 15, 17

*Rosal v. First Fed. Bank. of Cal.*,
  671 F. Supp. 2d 1111 (N.D. Cal. 2009) ................................................................ 20

*Schachar v. Am. Academy of Ophthalmology, Inc.*,
  870 F.2d 397 (7th Cir. 1989) .............................................................................. 15

*St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.*,
  No. CV 12-441-RGA, 2014 WL 2622240 (D. Del. June 11, 2014) .......................... 4

*Therasense, Inc. v. Becton, Dickinson and Co.*,
  649 F.3d 1276 (Fed. Cir. 2011) ................................................................. 1, 2, 9, 10

iv

*TransWeb, LLC v. 3M Innovative Properties Co.*,
   812 F.3d 1295 (Fed. Cir. 2016) ................................................................................................ 9

*Vistan Corp. v. Fadei USA, Inc.*,
   No. C-10-4862 JCS, 2011 WL 1544796 (N.D. Cal. Apr. 25, 2011) ........................................ 20

*Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*,
   382 U.S. 172 (1965) .......................................................................................................... 9, 13

**Statutes**

Cal. Bus. Prof. Code § 17200 ........................................................................................... 19, 20

Cal. Bus. Prof. Code § 17500 ............................................................................................... 19

## I.      NATURE AND STAGE OF THE PROCEEDINGS

On March 28, 2018, Plaintiff Pacific Biosciences of California, Inc. ("PacBio") filed its second amended complaint ("SAC") against Oxford Nanopore Technologies, Inc. ("ONT"), accusing ONT's nanopore-based sequencing products of infringing U.S. Patent Nos. 9,678,056 ("the '056 patent"), 9,738,929 ("the '929 patent"), and 9,772,323 ("the '323 patent").  *See* D.I. 52.  On April 25, 2018, ONT responded to the SAC, asserting several counterclaims alleging inequitable conduct and various forms of business misconduct.  *See* D.I. 64.  PacBio moves to dismiss ONT's counterclaims.

## II.     SUMMARY OF THE ARGUMENT

Like ONT's two failed attempts to dismiss PacBio's infringement claims as supposedly being based on patent ineligible subject matter, ONT's counterclaims are a legally unsupported effort to counter-attack PacBio that rely on allegations curiously inconsistent with ONT's own prior positions and public statements.

ONT's counterclaims are headlined by the allegation that PacBio's in-house attorney, Robert Reamey, supposedly committed inequitable conduct.  Yet, although Dr. Reamey had his deposition taken months ago (with the specific caveat that it would be ONT's single deposition of Dr. Reamey and not a tactic to set up a re-deposition), ONT is unable to include allegations suggesting that Dr. Reamey intended to deceive the Patent Office beyond the mere fact that particular prior art references were not submitted.  ONT's inequitable conduct allegations are thus of the speculative and smearing ilk that no longer pass muster under the Federal Circuit's *en banc* decision in *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276 (Fed. Cir. 2011).

Based on these legally infirm inequitable conduct allegations, ONT seeks to inject *Walker Process* antitrust counterclaims into this case more than a year after it was filed. Because ONT's inequitable conduct allegations are legally deficient, these counterclaims fail as

1

well.  Beyond that, ONT fails to adequately plead all the other requirements of an antitrust counterclaim.  Indeed, the suggestion that there is any sort of *antitrust* issue between ONT and PacBio becomes wholly unbelievable upon considering the statements of ONT's own CEO in parallel International Trade Commission ("ITC") litigation.  There, ONT's CEO stated that the companies "technologies are not interchangeable," and that PacBio's products "certainly are no substitute" for ONT's products.  Ex. 1.

Finally, ONT includes a series of state and federal counterclaims alleging that PacBio supposedly made false statements about the accuracy of ONT's DNA sequencing products.  Yet, the documents cited in ONT's pleadings show that the allegedly false data cited by PacBio was originally generated by an ONT-sponsored researcher who presented his data at an ONT-sponsored meeting.  PacBio's reference to ONT's own data cannot justify a plausible claim for false advertising.  ONT's counterclaims should be dismissed in their entirety.

## III.   STATEMENT OF FACTS

The relevant facts are set forth in the Argument section below.

## IV.   ARGUMENT

### A.   ONT Fails To Adequately Plead Inequitable Conduct

To establish inequitable conduct, an accused infringer must prove that a specific individual with a duty of candor to the PTO "misrepresented or omitted material information with the specific intent to deceive the PTO." *Therasense,* 649 F.3d at 1287.  Because of the seriousness of the allegation and ease with which it was included, the intent standard is now strictly enforced at the pleading stage. *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328–29 (Fed. Cir. 2009).  "Proving that the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive." *Therasense,* 649 F.3d at 1290.  The materiality requirement is similarly strict:  "the

materiality required to establish inequitable conduct is but-for materiality." *Id*. at 1291.  Prior art is "but-for material" only if the PTO would not have allowed a claim if it had been aware of the undisclosed prior art reference.  *Id*.  ONT's pleadings fall far short of a plausible showing that the stringent intent and materiality requirements for inequitable conduct are satisfied.

### 1.  ONT Has Not Adequately Pled Inequitable Conduct In The 056 Patent Prosecution

ONT's sole basis for alleging inequitable conduct in the '056 patent prosecution is the allegation that Dr. Reamey withheld two references—Bakhtina and Hanzel—that were considered by the Patent Office during the prosecution of another PacBio patent, the '672 patent.  That patent is incorporated by reference into the '056 patent—and the '672 patent eventually issued over these references.  Notably, ONT took Dr. Reamey's deposition months ago.  This deposition yielded no facts that ONT deemed worthy of including in this counterclaim.  As documented below, ONT has failed to adequately plead both materiality and intent.

### a.  ONT Fails To Adequately Plead A Specific Intent To Deceive

ONT's pleading of intent fails as a matter of law.  ONT's sole basis for alleging intent is that Dr. Reamey knew of Bakhtani and Hanzel based on his prosecution of the '672 patent six years before the prosecution of the '056 patent, and that he did not disclose either reference in the '056 prosecution.[1]

---

[1] ONT alleges that Dr. Reamey "made the deliberate decision to withhold" these two references, but this argument is belied on the face of the '056 and '672 patents.  A cursory examination of the face of the patents reveals that no prior-art reference cited during the prosecution of the '672 patent was cited during the prosecution during the '056 patent.  The logical inference from this evidence is that Dr. Reamey did not disclose any reference from the prosecution of the '672 patent as it would be redundant of information already disclosed to the PTO.  *See ChemFree Corp. v. J. Walter, Inc.*, No. CIV 104-CV-3711-JTC, 2008 WL 3884365, at *8 (N.D. Ga. June 10, 2008) ("Alice Martin's attempt to incorporate by reference those prior art references negates an inference of an intent to deceive.)

Courts have repeatedly held that alleging knowledge of the existence of prior art is insufficient as a matter of law to show intent for the purpose of pleading inequitable conduct. *See St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.*, C.A. No. 12-441-RGA, 2014 WL 2622240, at *2 (D. Del. June 11, 2014) ("Mr. Law's disclosure of certain WaveMap documents during the prosecution of a different Radi patent but not for the '514 patent is insufficient to infer an intent to deceive."); *Optium Corp. v. Emcore Corp.*, 603 F.3d 1313, 1321 (Fed. Cir. 2010) ("[i]ntent to deceive cannot be inferred solely from the fact that information was not disclosed") (internal citation omitted); *Bayer Cropscience AG v. Dow Agrosciences LLC*, 2012 WL 1253047, at *4 (D. Del. Apr. 12, 2012) (The "mere fact that Timmis had this knowledge is not in and of itself sufficient to justify the inference that 'Timmis deliberately withheld this information with a specific intent to deceive.'"). For this reason alone, ONT's inequitable conduct counter-claim patent must be dismissed.

In addition, the disclosure by PacBio to the PTO of the '672 patent in the prosecution of the '056 patent belies any intent to deceive, and instead creates a strong inference of candor and good faith. Dr. Reamey originally disclosed both Bakhtani and Hanzel to the PTO during the prosecution of the '672 Patent. Dr. Reamey disclosed the '672 Patent during the prosecution of the '056 Patent, even incorporating the '672 Patent by reference. Dr. Reamey has demonstrated a continued effort to disclose material information to the PTO, which is an objective indication of his candor and good faith. *See Mycone Dental Supply Co. v. Creative Nail Design, Inc.*, No. 11-4380, 2013 WL 3216145, at *7 (D.N.J. June 24, 2013) ("[T]here are objective indications of [the patentee's] candor and good faith. During the ... patent prosecution process, [the patentee] disclosed ... the '076 patent ... which lists Schoon as the inventor," dismissing claims alleging that the patentee hid information about Mr. Schoon's prior work); *Pixion, Inc. v. Citrix Sys., Inc.*,

No. C 09-03496 SI, 2012 WL 762005, at *6 (N.D. Cal. Mar. 8, 2012) (finding disclosure of existence of other patent application created inference of no intent to deceive even though patentee did not disclose office actions in the other application rejecting similar claims); *Oracle Corp. v. DrugLogic, Inc.,* No. C 11-00910 JCS, 2011 WL 5576267, at *11 (N.D. Cal. Nov. 16, 2011) (finding no intent where prior dictionary systems were disclosed in the specification, despite defendant's contention that the disclosure was incomplete and deceptive).

In order to adequately plead inequitable conduct, ONT must show that "the single most reasonable inference able to be drawn from the evidence" is that Dr. Reamey acted with an intent to deceive the PTO. *Exergen Corp.*, 575 F.3d at 1329 n.5. Here, the logical inference from the prosecution history of the '056 patent is that Dr. Reamey disclosed the '672 patent, and incorporated it by reference in the '056 patent, in a good faith effort to satisfy his obligations to the PTO, not to deceive. *See MGM Well Servs., Inc. v. Mega Lift Sys., LLC*, 534 F. Supp. 2d 705, 712 (S.D. Tex. 2007)*, aff'd,* 264 F. App'x 900 (Fed. Cir. 2008) (granting summary judgment of no inequitable conduct where "the '637 and the '541 Patents were not only disclosed to the USPO during the application for the '060 Patent, they were incorporated by reference into the application.   As a result, all information contained in the '637 and the '541 Patents… was presented to the USPO for its consideration in evaluating the application for the '060 Patent."). Thus, ONT's pleading must fail.

### b.    ONT Fails To Adequately Plead Materiality

Because the materiality standard for inequitable conduct is "but for" materiality, a viable inequitable conduct claim must allege facts sufficient to show not only why the alleged omission was material and not cumulative, but also how a patent examiner would have used this material information in assessing patentability.   *Exergen*, 575 F.3d at 1329-30.   A reference is not material to patentability if it is merely cumulative of information already provided to the PTO.

*Leviton Mfg. Co. v. Univ. Sec. Instr., Inc.*, 606 F.3d 1353, 1359 (Fed. Cir. 2010).

ONT failed to allege facts sufficient to plausibly show why Bakhtani or Hanzel are but-for material, such that the PTO would not have allowed the claims of the '056 patent. Quite the contrary, ONT admits that the examiner rejected the '056 patent for obviousness-type double patenting over the '672 patent. D.I. 64 ¶ 43. In other words, according to the Patent Office, the claims of the '056 Patent "are not patentably distinct from claims" of the '672 patent. *Boehringer Ingelheim Int'l GmbH v. Barr Labs., Inc.*, 592 F.3d 1340, 1346 (Fed. Cir. 2010). Moreover, the claims of the '672 patent were allowed over Bakhtani and Hanzel. ONT offers no explanation for how the claims of the '672 patent are valid over Bakhtani and Hanzel, but the claims of the '056—which are not patentably distinct—could have been rejected based on the same prior art. If anything, the timeline of events set forth in ONT's pleadings establishes the implausibility of its inequitable conduct theory.

ONT also failed to allege facts sufficient to plausibly show how Bakhtani or Hanzel would have altered the examiner's decision to allow the '056 patent. ONT's argument is based solely on the examiner's statement in the notice of allowance that "the manipulation of the reaction conditions to create the claimed ratio of rate constants is free and clear of the prior art." D.I. 64 ¶ 52. This statement, however, is not referring to the reaction in the '672 patent, or even to Bakhtani and Hanzel. Rather, the examiner concluded that the manipulation of the reactions of an entirely different reference, Akeson, to create the claimed ratio of rate constants could not be found in the prior art. *Id.* ONT does not analyze or even discuss Akeson. Moreover, ONT has made no showing and alleged no facts that suggest that Bakhtani or Hanzel could be combined with Akeson or any other references, much less that such a combination would render obvious the claims of the '056 patent. Without any such supporting facts, ONT cannot support

6

an allegation of but-for materiality. *See Insite Vision Inc. v. Sandoz, Inc.*, 783 F.3d 853, 859 (Fed. Cir. 2015) (obviousness requires a showing that a person of ordinary skill in the art "would have been motivated to combine the teachings of the prior art references to achieve the claimed invention, and ... would have had a reasonable expectation of success in doing so").

### 2.    ONT Fails To Adequately Plead That Material Misrepresentations Were Made During The '323 Patent Prosecution

ONT's inequitable conduct allegation for the '323 patent is based on attorney argument that is not plausibly a material misrepresentation to the PTO. Specifically, ONT alleges that Dr. Reamey made two material misrepresentations about a prior art reference before the examiner in the prosecution of the '400 patent, the parent of the '323 patent: (1) the inventors on the '400 patent have found that the Hibbs prior-art reference is "insufficient for obtaining reliable sequence data," and (2) Hibbs does not disclose $4^N$ calibration measurements as claimed in the 400 Patent. D.I. 64 ¶¶ 77, 78. Neither can rise to the level of a material misrepresentation as a matter of law and they are not false anyway.

First and foremost, neither statement made during the prosecution of the '400 patent about a reference before the examiner is a material misrepresentation as a matter of law. The Federal Circuit "has recognized, the mere fact that a patent applicant attempts to distinguish its patent from the prior art does not constitute a material omission or misrepresentation where the patent examiner has the prior art before him or her, and therefore, is free to make his or her own conclusions regarding the claimed invention." *LifeScan, Inc. v. Home Diagnostics, Inc.*, 103 F. Supp. 2d 379, 386 (D. Del. 2000) (citing *Akzo N.V. v. U.S. Int'l Trade Comm'n*, 808 F.2d 1471 (Fed. Cir. 1986)); *see also Exergen Corp. v. Brooklands Inc.*, 290 F. Supp. 3d 113, 123-24 (D. Mass. 2018) ("representations as to how to interpret [prior art before the examiner] cannot be the basis for a finding of inequitable conduct"); *Ethyl Molded Prods. Co. v. Betts Packaging, Inc.*,

7

CIV. A. No. 85-111, 1988 WL 122168, at *53 (E.D. Ky. Sept. 2, 1988) ("Nor is it a violation of the attorney's duty of candor to present arguments to the patent office to distinguish or point out shortcomings in the prior art."). Here, it is unquestioned that the examiner had fully and independently analyzed Hibbs as part of the examination of the '400 patent. D.I. at ¶¶ 72, 73. Thus, Dr. Reamey satisfied his duty of candor through the disclosure of Hibbs, and his (correct) arguments regarding Hibbs cannot rise to the level of a material misrepresentation. For this reason alone, ONT's inequitable conduct allegation as to the '323 patent must be dismissed.

Second, even if the statements could be interpreted as material (which they cannot), ONT has failed to plead any facts that would support the allegation that Dr. Reamey's arguments were falsehoods. Hibbs does not disclose $4^N$ calibration measurements, as is clear from the face of the reference. Tellingly, despite citing 10 paragraphs and multiple figures from Hibbs in its counter-claims, ONT never once provides a quote from Hibbs disclosing $4^N$ calibration measurements. *See* D.I. 64 ¶¶ 87, 88.

The final aspect of ONT's argument is that Dr. Reamey falsely asserted to the PTO that the inventors had made an actual laboratory reduction to practice by stating that they "have found that Hibbs' methods are insufficient for obtaining reliable sequence data." D.I. 64 ¶¶ 81, 82. According to ONT, this was false because PacBio's laboratory scientists do not work with nanopores and "PacBio has never made a product that passes DNA through a nanopore." D.I. 64 ¶¶ 83, 84. Yet, Dr. Reamey's statement during prosecution about what the inventors "found" is not properly accepted as establishing an intent to deceive the PTO into believing that PacBio scientists had done certain experiments or achieved certain laboratory results. Dr. Reamey merely made a true statement about what the inventors had found in their exploration of the prior art. The act of invention does not require experimentation, and the means by which the inventors

found the invention—whether by experiment, simulation, or reasoning—is not implied.  Nothing about Dr. Reamey's statement suggests inequitable conduct.

### B.      ONT Fails to Adequately Plead *Walker Process* Claims

In general, innovators, such as PacBio, are immune from antitrust claims for seeking redress from this Court for patent infringement.  Nevertheless, ONT attempts to rely on narrow exceptions to this protection by pleading *Walker Process* claims under the Sherman Act.  While Rule 9 applies to *Walker Process* claims such that fraud must be pled with specificity, that is only the starting point.  ONT must also allege all other elements of a Section 2 monopolization claim with plausible factual allegations.  *See Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 174 (1965) (The "enforcement of a patent procured by fraud on the Patent Office may be violative of § 2 of the Sherman Act provided the other elements necessary to a § 2 case are present.").  To "avoid turning every patent case into an antitrust case, some threshold of plausibility must be crossed at the outset before a patent antitrust case should be permitted to go on its inevitably costly and protracted discovery phase." *Asahi Glass Co. v. Pentech Pharm. Inc.*, 289 F. Supp. 2d 986, 995 (N.D. Ill. 2003).  As documented below, ONT has not crossed this threshold, and Counterclaims 9-12 must be dismissed.

### 1.      ONT Fails To Plausibly Allege The Fraud Component Of A *Walker Process* Claim

ONT's *Walker Process* counterclaims are dependent upon its inequitable conduct counterclaims.  "After *Therasense*, the showing required for proving inequitable conduct and the showing required for proving the fraud component of *Walker Process* liability may be nearly identical."  *TransWeb, LLC v. 3M Innovative Properties Co.*, 812 F.3d 1295, 1307 (Fed. Cir. 2016).  At the very least, a "finding of *Walker Process* fraud requires **higher** threshold showings of both intent and materiality than does a finding of inequitable conduct," *Nobelpharma AB v.*

9

*Implant Innovations, Inc.*, 141 F.3d 1059, 1070-71 (Fed. Cir. 1998), and a showing that the alleged fraud was the but-for cause of the Patent Office grant of the patent at issue. *Therasense*, 649 F.3d at 1296.   As documented above, ONT has failed to adequately plead inequitable conduct. *See supra* Section IV(A).   Accordingly, Counterclaims 9-12 must be dismissed.

### 2.   ONT Fails to Plausibly Define Its Overly Narrow Relevant Product Market And Monopoly Power

To adequately plead a product market for antitrust purposes, a claimant cannot simply rely on conclusory statements, but must allege sufficient facts in support of the boundary it alleges constitutes the relevant product market. *See, e.g.*, *Premier Comp Sol'ns LLC v. UPMC*, 163 F. Supp. 3d 268, 278 (W.D. Pa. 2016).

ONT alleges the relevant market to be "long read DNA sequencing products."  D.I. 64 ¶ 103.  Relying on that definition, ONT asserts that PacBio has monopoly market share, and that the only other participant in the alleged "market" is ONT.   ONT, however, offers no factual pleading support for such a "market," instead relying solely—and incorrectly—on statements in PacBio's SAC and a PacBio white paper entitled "Structural Variation in the Human Genome" (the "White Paper").   D.I. 64 ¶¶ 101, 103-110; *see* Ex. 2.[2]   Even a cursory review of those materials demonstrates the implausibility of ONT's monopolization theories.

First, ONT cites SAC ¶ 12, stating that "PacBio alleges that PacBio and Oxford 'compete' in the 'long read' 'market.'" D.I. 64 ¶ 101 (quoting SAC ¶ 12).   In reality, SAC ¶ 12 says "PacBio and Oxford compete in the ***single-molecule sequencing*** market."  SAC ¶ 12 (emphasis added).   Nowhere in the SAC does PacBio limit the scope of competition to the

---

[2] On a motion to dismiss, the Court is entitled to consider documents relied upon by ONT here: the Complaint (and any attached exhibits), and an "undisputedly authentic document…if the plaintiff's claims are based on the document."  *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

narrow set of sequencing products that provide long reads.  *Id.*  Indeed, it does the opposite.

In a similar vein, ONT twists PacBio's allegations in the SAC in stating that "[l]ong read sequencing technology is…distinguishable from other sequencing technologies in that, as alleged by PacBio, long read sequencing products are 'capable of determining the sequence of long stretches of DNA in a single pass.'"  D.I. 64 ¶ 106 (quoting SAC ¶ 12).  Read in full, PacBio stated merely that ONT offers a sequencing product capable of generating long reads, like PacBio's products.  PacBio's SAC did not allege that sequencing products capable of providing long reads are distinguishable from other sequencing products from an antitrust perspective.

ONT continues by positing that PacBio alleges sequencing products capable of providing long reads are "unique from and therefore not interchangeable with other sequencing products," D.I. 64 ¶ 105 (quoting SAC ¶ 5).  The quoted language, however, describes "PacBio's SMRT® Sequencing Platform and technology"—not all products capable of generating long reads, and certainly not ONT's products.  *See* SAC ¶ 5.  ONT omits the very next sentence in the SAC, which **differentiates** PacBio's SMRT® Sequencing Platform from other sequencing products, including ONT's, in that it "is believed to be **the only** DNA sequencing technology that provides the ability to simultaneously detect epigenetic changes."  *Id.* (emphasis added).

ONT's misuse of the SAC does not stop there.  ONT states that "PacBio identifies a number of scientific characteristics and functions that distinguish long read from non-long read DNA sequencing technologies," quoting the White Paper's explanation that PacBio's SMRT® Sequencing Platform is more accurate than other products.  D.I. 64 ¶ 107. ONT goes on to quote the White Paper's statements differentiating the SMRT® Sequencing Platform from short-read sequencing, linked-read sequencing, and synthetic long-read sequencing, but it—again conspicuously—fails to quote the very next sentence, which distinguishes ONT's MinION

11

product from its own.  At bottom, there is nothing in any of the quoted material to establish a market consisting solely of PacBio's and ONT's sequencing products.  At most, the statements differentiate PacBio's products from those of any other entity, which hardly supports arbitrarily cordoning off PacBio and ONT from others in the market.

Furthermore, to the extent Oxford attempts to allege monopoly power, it alleges only that PacBio possesses an 80% market share, D.I. 64 ¶ 115, but "[a]lleging market share alone is not sufficient to state a claim under the Sherman Act." *Crossroads Cogeneration Corp. v. Orange & Rockland Utils.*, 159 F.3d 129, 141 (3d Cir. 1998).  Oxford relies on PacBio's statement in the SAC that PacBio is a "commercial leader," D.I. 64 ¶ 115, but all this establishes is that PacBio has successfully commercialized its products.  Any other allegations relating to monopoly power, such as barriers to entry, amount only to formulaic recitations of the elements of a monopolization or attempted monopolization claim, as out of a hornbook.  *See, e.g.*, *id.* ¶ 111-14.

One might wonder why, instead of trying to turn the tables on PacBio by mischaracterizing the SAC, ONT does not look to its own documents to substantiate its allegations.  ONT's statements outside litigation are counter to its allegations in this Court.

Indeed, ONT has flatly stated in an ongoing ITC investigation that PacBio's SMRT® Sequencing Platform is not comparable to ONT's DNA sequencing products.  ONT's CEO submitted a letter to the ITC stating that the companies' "technologies are not interchangeable," that "neither PacBio nor any other provider offers a sequencer comparable to the MinION," that "the same is true for Oxford Nanopore's new desktop PromethION device," that PacBio's products "certainly are no substitute" for ONT's MinION and PromethION products, and that ONT's "PromethION device does not compete with conventional sequencers" such as PacBio's. Ex. 1; *see Pension Benefit* 998 F.2d at 1196 (courts can consider matters of public record on

12

motions to dismiss).  To be clear, PacBio and ONT do compete directly.  ONT's statements, however, vividly reveal the dubiousness of any allegation that PacBio is situated so as to commit an *antitrust* violation with respect to ONT.  Because ONT utterly fails to allege *any* relevant product market, Counterclaims 9-13 must be dismissed.

### 3.    ONT Fails to State a Section 2 Claim Based On "Cumulative Acts"

Without identifying any particular conduct, ONT takes a kitchen sink approach with Counterclaim 13, alleging a Sherman Act violation based upon so-called "cumulative acts."  D.I. 64 ¶ 189.  While one must guess what ONT has in mind, these "cumulative acts" appear to be: (1) the enforcement actions included in the *Walker Process* counterclaims; (2) PacBio's efforts to protect its patent rights at the ITC and other Courts; and (3) a supposed "misinformation campaign."  As documented below, however, the first two categories are immune from antitrust law, and the allegations of a "misinformation campaign" cannot form the basis of an antitrust claim as a matter of law.

In its landmark decision in *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49 (1993), the Supreme Court held that for litigation to be "sham" for antitrust purposes, it must be both objectively and subjectively baseless.  Despite colorful language in its introduction to the antitrust claims, ONT does not actually allege any facts directed to this standard.  For instance, there are only conclusory allegations of invalidity, and no facts to support a non-infringement position.  Having failed to plead facts, ONT is forbidden under the law from using "cumulative acts" as a "subterfuge" to introduce a half-baked "sham" litigation claim.  *See Abbott Labs. v. Teva Pharm. USA, Inc.*, 432 F. Supp. 2d 408, 430, 430 n.17 (D. Del. 2006) (Plaintiff "may not use litigation conduct to support a claim of an overall scheme to monopolize if they cannot prove that the litigation was a sham.").  Thus, any "cumulative acts" claim must exclude PacBio's enforcement of the '056 patent, the '400 patent, and the '323

13

patent from the "mix of things alleged to violate the antitrust laws." *Id.* at 430 n.17.

Moreover, even if ONT concedes this narrowing of its claim, as it must, it will find no comfort in its list of enforcement efforts by PacBio in other fora, including the ITC, the High Court of England and Wales, and the District Court of Mannheim, Germany.  With a wave of the hand, ONT asserts that because the ITC terminated its investigation, all of PacBio's efforts are meritless.  D.I. 64 ¶ 125.  For several reasons, this conclusion does not follow.

First, the ITC complaint is subject to First Amendment protection under *Columbia Pictures*.  Second, it covered different patents than the complaints filed in this Court, and thus has no bearing on the merits of this litigation.  Third, the ITC's closure of its investigation is far from the final word on the merits of PacBio's complaint and, in fact, is currently under appeal based on claim construction under a de novo standard.  *See Pacific Biosciences of California, Inc. v. United States International Trade Commission*, No. 18-1587 (Fed. Cir. filed February 16, 2018).  Fourth, PacBio is no longer asserting the infringement claims in the United Kingdom and Germany, as the parties entered into settlements in May 2018 pursuant to which ONT agreed to cease its activities connected to the accused products, a point ONT omits.  *See* Ex. 3.  Thus, to the extent the foreign litigation is even relevant, ONT's concession shows that it was not a "sham."  For these reasons, PacBio's government-petitioning efforts relating to the protection of its patent rights—and the irrelevancy of the other enforcement efforts alleged—demonstrate that they are not the grist of a Section 2 overall scheme claim.

What remains of ONT's "cumulative acts" allegations is simply an allegation that PacBio misinformed the public as to the accuracy of ONT's DNA sequencing products.  Even if these allegations were true, these advertising claims do not constitute a restraint of trade under the Sherman Act.  *See, e.g., E.R.R. Pres. Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 145

(1961) (even "deception, reprehensible as it is, can be of no consequence so far as the Sherman Act is concerned"); *Schachar v. Am. Academy of Ophthalmology, Inc.*, 870 F.2d 397, 399 (7th Cir. 1989) ("Antitrust law does not compel your competitor to praise your product or sponsor your work."). ONT fails to state a Section 2 claim based on an overall scheme of anticompetitive activity on PacBio's part. Accordingly, Counterclaim 13 must be dismissed.

### C.      ONT Has Not Plausibly Pled False Advertising Under The Lanham Act

ONT's Lanham Act counterclaims are based on three supposedly false or misleading statements by PacBio: (1) unspecified statements of PacBio's CEO at a conference regarding the accuracy of ONT's MinION sytem; (2) statements in the White Paper regarding the accuracy of ONT's products for detecting particular genetic mutations; and (3) statements by PacBio's CSO at a 2017 scientific meeting regarding the same issue. *See* Counterclaims ¶¶ 121, 122, 198. These alleged misstatements are addressed in turn below, with last two categories being addressed together because they are based on the same nucleus of events. ONT's allegations do not cross the plausibility threshold required under Rule 8.

### 1.      ONT Has Not Plausibly Pled False Advertising Based On Dr. Hunkapiller's Statements

For a Lanham Act claim to survive a motion to dismiss, the plaintiff must assert enough facts to plausibly show that the defendant's statements "were, in context, literally false or that they were misleading". *See Accenture Glob. Servs. GMBH v. Guidewire Software Inc.*, 581 F. Supp. 2d 654, 666–67 (D. Del. 2008); *see also Johnson & Johnson–Merck Consumer Pharm. Co. v. Rhone–Poulenc Rorer Pharm., Inc.*, 19 F.3d 125, 129–30 (3d Cir. 1994). The claim must include "sufficiently detailed allegations regarding the nature of the alleged falsehood to allow [the counterclaim defendant] to make a proper defense." *Robert Bosch LLC v. Pylon Mfg. Corp.*, 632 F. Supp. 2d 362, 365 (D. Del. 2009) (citing *Max Daetwyler Corp. v. Input Graphics, Inc.*,

608 F. Supp. 1549, 1556 (E.D. Pa. 1985)). Insofar as ONT's counterclaims are based on Dr. Hunkapiller's statements, it has failed to meet this standard.

Although ONT alleges that Dr. Hunkapiller said ONT's system had poor accuracy, it provides no meaningful information regarding the content of Dr. Hunkapiller's statements and does not submit or cite any documentary evidence.  Based on the pleadings, PacBio has no idea what ONT alleges Dr. Hunkapiller said that is the basis for legal action.  Accordingly, ONT necessarily fails to plead facts suggesting that his statements—whatever they might have been— were false or misleading.  *See Accenture*, 581 F. Supp. 2d at 667 ("Guidewire has also failed to allege facts sufficient to make plausible the contention that the relevant public was misled by these statements. In this regard, Guidewire was required to allege facts suggesting that the marketplace was **actually** confused or misled, not just that the marketplace **could** have been confused or misled.").

Likewise, ONT's pleading fails to identify the audience for Dr. Hunkapiller's allegedly false statements.   Accordingly, ONT fails to plead facts suggesting that his statements constituted "commercial advertising or promotion," as required under the Lanham Act.  *See Reybold Grp. of Cos., Inc. v. Does 1-20*, 323 F.R.D. 205 (D. Del. 2017).   "[C]ommercial advertising or promotion" requires "(1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services; (4) that is disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry." *Id.*  ONT's counterclaims include nothing allowing one to plausibly conclude that any of elements (1), (3), and (4) are met.

Based on the counterclaims, Dr. Hunkapiller's statements could have been nothing more than statements of personal belief he made to a few individuals in a private conversation while

16

attending a conference.  This is not actionable under the Lanham Act.  ONT has fallen far short of providing enough factual allegations to allow PacBio to "make a proper defense," as required under the law.  *See Robert Bosch* , 632 F. Supp.2d at 365 .  Thus, insofar as ONT's Lanham Act counterclaims are based on Dr. Hunkapiller's statements, they should be dismissed.

### 2. ONT Has Not Plausibly Pled False Advertising Based On The White Paper Or Dr. Korlach's Statements

ONT's remaining Lanham Act allegations are directed to allegedly false statements in a White Paper on PacBio's website and by PacBio's CSO, Dr. Jonas Korlach, at a conference.  At their core, ONT's allegations are that PacBio deceptively stated ONT had a 65% false detection rate for certain kinds of genetic mutations.  *See* D.I. 64 ¶¶ 198, 203.  If anything ONT's pleadings demonstrate the ***implausibility*** of a Lanham Act claim based on these statements.

Indeed, the White Paper relied upon by ONT demonstrates that the allegedly false information was not actually from PacBio.  As citation 29 in the White Paper shows, the information regarding ONT's 65% false detection rate comes from a 2016 presentation by Wigard Kloosterman entitled "Characterization of structural variations and chromothripsis in nanopore sequencing data of human genomes."  *See* Ex. 2 at 8, Table 2.

Dr. Kloosterman is an ONT-sponsored researcher who has hosted scientific meetings on ONT's behalf.  *See* Ex. 4.  His 2016 presentation was a plenary talk at ONT's own Nanopore Community Meeting.  ONT has preserved Dr. Kloosterman's presentation on its website, and his slides are marked with both the ONT logo and an ONT copyright.  As Dr. Kloosterman's slide shows, using ONT's technology he could validate only 35% of detected structural variations, meaning that 65% were falsely detected:



Ex. 5 at 12:28-12:40.  As Dr. Kloosterman states with regard to the validation rate, "there's still had for improvement there."  *Id.*  Like the White Paper, Dr. Korlach merely referred to the ONT-endorsed data presented by Dr. Kloosterman.   Dr. Korlach's alleged Lanham Act-violating PowerPoint presentation simply reproduced Dr. Kloosterman's slide in full.  *See* Ex. 6.

Against this backdrop, ONT alleges no facts plausibly showing that any of PacBio's statements were literally false and/or misleading.   The only thing ONT cites to support its allegations of falsity is a paper from 2018 supposedly showing better performance than what Kloosterman reported.   Yet, this paper came long ***after*** all of PacBio's alleged misstatements, and thus says nothing about whether PacBio's statements were false at the time they were made. Regardless, if anything, the 2018 paper bluntly acknowledges that ONT still suffers from false detection problems, noting the "higher than expected number of deletions, due to consistent truncation of homopolymer and low-complexity regions."  Ex. 7 at 3.  Thus, if anything, ONT's own pleadings establish that there is no plausible claim for false advertising based on the White Paper or Dr. Korlach's presentation.

### D.    ONT Fails To Adequately Plead False Advertising Under §17500

Because ONT has failed to allege a claim under the Lanham Act, its counterclaim for false advertising under Cal. Bus. and Prof. Code §17500, likewise, fails as a matter of law.  *See Japan Telecomm, Inc. v. Japan Telecomm Am. Inc.*, 287 F.3d 866, 875 (9th Cir. 2002) (plaintiff's

"California unfair competition claim fails because its related Lanham Act claims fail"); *Denbicare U.S.A., Inc. v. Toys R Us, Inc.*, 84 F.3d 1143, 1152–53 (9th Cir. 1996), abrogated on other grounds (dismissal of plaintiff's Cal. Bus. Prof. Code § 17200 and Cal. Bus. Prof. Code § 17500 claims was proper since plaintiff's Lanham Act claim was properly dismissed).

### E.     ONT Fails To Adequately Plead Unfair Competition Under § 17200

To state a claim under § 17200, a plaintiff must adequately plead that defendant's conduct was fraudulent, unlawful, or unfair.  Cal. Bus. Prof. Code § 17200; *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).   ONT's allegations, however, are insufficient to meet any of these prongs.[3]

To the extent ONT's § 17200 claim is predicated on fraudulent statements underlying its Lanham Act claims, ONT lacks standing because it does not allege its own reliance on the false advertising.  *See L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*, 114 F. Supp. 3d 852, 866-867 (N.D. Cal. 2015) (Because "Plaintiffs do not plead their own reliance on Uber's allegedly false advertising, they lack standing to seek relief under the UCL's fraud prong."); *Heartland Payment Sys., Inc. v. Mercury Payment Sys.*, LLC, No. C 14-0437 CW, 2015 WL 3377662, at *6 (N.D. Cal. Feb. 24, 2015) (holding that § 17200 imposes an actual reliance requirement).

To plead a § 17200 claim based on an "unlawful" business act or practice, a plaintiff must allege facts sufficient to show a violation of some underlying law.  *See Farmers Ins. Exch.*

---

[3] To the extent that ONT's UCL claim is based on allegations relating to PacBio's protected activities of procuring and enforcing its patents and/or engaging in the judicial process, ONT's § 17200 claim should stricken (*see Gilead Scis., Inc. v. Abbott Labs., Inc.,* No. CV 13-2034-GMS, 2015 WL 1191129, at *6 (D. Del. Mar. 13, 2015) (granting motion to strike under California's Anti-SLAPP Statute plaintiff's § 17200 claim because the claim is based on protected activity of filing provisional patent applications and declarations with the PTO)) and/or dismissed.  *See also Chip-Mender Inc. v. Sherwin-Williams Co.,* No. C 05-3465 PJH, 2006 WL 13058, at * 10 (N.D. Cal. Jan. 3, 2006) ("[T]here is no legal authority to support the proposition that delay in pursuing licensing discussions or in filing a patent infringement suit constitutes unfair competition.")

*v. Super. Ct.*, 2 Cal. 4th 377, 383 (1992); *see also Ingels v. Westwood One Broad. Servs., Inc.*, 129 Cal. App. 4th 1050, 1060 (Cal. Ct. App. 2005) ("A defendant cannot be liable under § 17200 for committing unlawful business practices without having violated another law.") (quotation marks omitted).  ONT, however, does not allege that PacBio has violated any statute, but instead points to its other counterclaims as the underlying wrongful conduct.  *See* D.I. 64 ¶ 211. Because ONT has failed to sufficiently allege any of its Counterclaims, its § 17200 claim based on "unlawful" conduct likewise fails.  *Rosal v. First Fed. Bank. of Cal.*,  671 F. Supp. 2d 1111, 1126 (N.D. Cal. 2009) ("Where a plaintiff cannot state a claim under the 'borrowed' law, she cannot state a UCL claim either."); *see also Vistan Corp. v. Fadei USA, Inc*., No. C-10-4862 JCS, 2011 WL 1544796, at *9-*10 (N.D. Cal. Apr. 25, 2011) (dismissing UCL claim because it relied on a separate claim alleging violation of the Sherman Act, which was deficiently pled).

Finally, as to the unfair prong, courts caution against an overly broad application, noting that general assertions of public policy will not be sufficient, unless the policy is "'tethered' to specific constitutional, statutory or regulatory provisions."  *Newsom v. Countrywide Home Loans, Inc.*, 714 F. Supp. 2d 1000, 1011 (N.D. Cal. 2010).   Here, ONT relies on alleged antitrust violations.  As discussed above, however, ONT fails to allege that PacBio violated an antitrust law, or the spirit or policy of an antitrust law, or otherwise significantly harmed competition. ONT's § 17200 claim thus fails under the "unfair" prong.  *See, e.g.*, *DocMagic, Inc. v. Ellie Mae, Inc*., 745 F. Supp. 2d 1119, 1147 (N.D. Cal. 2010) ("DocMagic has not alleged facts showing that Ellie Mae's conduct violated the Sherman Act…As a result, any claims DocMagic might be asserting under the UCL's unfair prong necessarily fail as well.").

## V.    CONCLUSION

For the foregoing reasons, ONT's counterclaims should be dismissed.

FARNAN LLP

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market St., 12th Floor
Wilmington, DE 19801
(302) 777-0300
(302) 777-0301 (Fax)
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Plaintiff*

OF COUNSEL:

Edward R. Reines
Derek C. Walter
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065
(650) 802-3000

June 15, 2018