UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PACIFIC BIOSCIENCES OF CALIFORNIA, INC., <br><br> Plaintiff, <br><br> v. <br><br> OXFORD NANOPORE TECHNOLOGIES, INC., and OXFORD NANOPORE TECHNOLOGIES, LTD., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> C.A. No. 17-cv-275-LPS <br> C.A. No. 17-cv-1353-LPS |

## VOIR DIRE

Good morning, ladies and gentlemen. I am Judge Stark, and I will be presiding over the trial for which a jury is about to be drawn in the case captioned *Pacific Biosciences of California, Inc. v. Oxford Nanopore Technologies, Inc. and Oxford Nanopore Technologies, Ltd.*

This case is an action for alleged patent infringement arising under the patent laws of the United States. The plaintiff is Pacific Biosciences of California, Inc. I will refer to the plaintiff as PacBio. The defendants are Oxford Nanopore Technologies, Inc. and Oxford Nanopore Technologies, Ltd. I will refer to these parties as Defendants, ONT, or Oxford.

Those of you selected to serve as jurors will receive more detailed instructions once you are sworn in as jurors and again at the conclusion of the trial. For now, I will simply tell you that PacBio accuses ONT of infringing its asserted rights to certain intellectual property. ONT denies the infringement allegations.

The trial will begin later today and is expected to take up to eight business days to try, meaning we expect to be completed no later than next Wednesday, March 18. Jury deliberations could extend your service beyond that. Our trial days will run from approximately 9:00 am to 5:00 pm, although on same days we will finish earlier than 5:00. Each day we will have a morning break, an afternoon break, and a lunch break. On all trial days other than today, we will provide you with lunch.

In light of this brief summary, I will ask you certain questions, the purpose of which is to: (1) enable the Court to determine whether or not any prospective juror should be excused for cause; and (2) enable counsel for the parties to exercise their individual judgment with respect to peremptory challenges, that is, challenges for which no reason need be given by counsel.

All of the questions I am about to read to you are stated in a "yes/no" format. It is not necessary at this time for you to respond to my questions in any way as I read them. You do not need to stand, speak, or raise your hand. Instead, I ask that you simply do your best to remember if you have a "yes" answer to any of the questions. When I have finished reading all of the questions, I will ask for a show of hands as to how many of you had a "yes" answer to any of the questions. It is not necessary for you to remember which question or questions to which you had a "yes" answer.

After I read all the questions, my courtroom deputy will randomly draw 28 juror numbers. The jurors having the first 14 juror numbers he draws will be seated in the jury box. The jurors having the next 14 juror numbers he draws will be seated in the first row of benches.

At that point, I will move to sidebar, along with some of the lawyers and the court reporter. Meanwhile, my deputy will move among the 28 jurors who have been initially selected and ask them if they had a "yes" answer to any of my questions. If a juror did have a "yes"

answer, he or she may be brought over to sidebar to talk to me and the lawyers. After we speak with you, my deputy or I will then tell you whether to go to the jury box or back to the benches. Once we are done speaking to as many jurors as is necessary, I will explain the remaining steps of the jury selection process.

The questions are as follows:

1. Have any of you heard or read anything about this case?

2. Now I will ask the attorneys for each side to introduce themselves to you, giving their names and the names and locations of their respective law firms. They will also identify the companies they represent, any representatives of the companies involved in this case who will be here during the trial, and any witnesses who may be part of this trial. [Counsel]

Ladies and gentlemen, Question 2 is: have you, any member of your immediate family, or any close friend ever been employed by, owned stock in, or had a dispute or relationship with any of these individuals, parties, or companies?

3. Before today, had you ever heard of any of the PacBio or ONT entities I have mentioned?

4. Do you have an opinion about any of the companies or entities I have mentioned?

5. Do you have any experience with the development or manufacture of DNA sequencing or clinical diagnostics products?

6. Have you, or has anyone in your immediate family or a very close friend of yours, been employed by the United States Patent and Trademark Office?

7. Have you, or has anyone in your immediate family or a very close friend of yours, ever invented a new product or process, applied for a patent, or obtained a patent in the United States or abroad?

  8. Have you, or has anyone in your immediate family or a very close friend of yours, been involved in a dispute about an invention or patent rights?

  9. Do you have any strong opinions about patents, patent rights, or the United States Patent and Trademark Office?

  10. Do you have any strong opinions about the life science research, DNA sequencing, and clinical diagnostics industry or companies?

  11. Do you have strong opinions about British companies and that such companies do business in the United States?

  12. Have you, or has anyone in your immediate family, participated in a lawsuit as a party or as a witness?

  13. Have you ever served on a jury?

  14. If you are selected to be a member of the jury in this case, is there any reason you would be unable to render a verdict based solely on the evidence presented at the trial?

  15. If you are selected to be a member of the jury in this case, is there any reason you would not be able to follow and apply the law as I explain it to you?

  16. Is there anything, such as severe health problems, poor vision, difficulty hearing, difficulty understanding spoken or written English, or a substantial hardship resulting from the schedule in this trial that would make serving as a member of the jury especially difficult for you?

  That concludes the voir dire questions. If you believe you have a "yes" answer to any of my questions, please raise your hand.