**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

PACIFIC BIOSCIENCES OF )
CALIFORNIA, INC., )
)
   *Plaintiff,* )  C.A. No. No. 17-cv-275-LPS
)  C.A. No. No. 17-cv-1353-LPS
  v. )
)
OXFORD NANOPORE TECHNOLOGIES, )
INC., )
)
   *Defendants.* )
)
)

**PLAINTIFF'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR JUDGMENT AS**
**A MATTER OF LAW UNDER <u>FRCP 50, AND NEW TRIAL UNDER FRCP 59</u>**

Dated: April 29, 2020

*Of Counsel*:

Edward R. Reines (admitted *pro hac vice*)
Derek C. Walter (admitted *pro hac vice*)
Robert S. Magee (admitted *pro hac vice*)
Shawn Chi (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000
edward.reines@weil.com
derek.walter@weil.com
robert.magee@weil.com
shawn.chi@weil.com

Stephen Bosco (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682 7054
stephen.bosco@weil.com

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market Street, 12th Floor
Wilmington, Delaware 19801
Telephone: (302) 777-0300
Facsimile: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Plaintiff*

Anna Dwyer (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310 8285
anna.dwyer@weil.com

## TABLE OF CONTENTS

Page

I.      INTRODUCTION.........................................................................................................1

II.     ARGUMENT ...............................................................................................................2

    A.      The Court Should Grant JMOL That The '400 And '323 Patents Are
            Not Invalid And ONT Is Liable For Infringement ............................................2

        1.      Dr. Goldman's Testimony Is Conclusory ...............................................3

        2.      Cross-Examination Confirmed There Is No Substance To Dr.
                Goldman's Enablement Testimony ...........................................................5

        3.      Skilled Artisans Would Have Been Able To Determine N
                With The Benefit Of The Patent .................................................................6

    B.      Alternatively, The Court Should Grant A New Trial On Enablement
            Of The '400/'323 Patents ........................................................................................7

    C.      The Court Should Grant JMOL That Claim 2 And 12 Of The '056
            Patent Are Not Invalid And That ONT Is Liable For Infringement ...............7

        1.      Dr. Ha's Admissions Are Incompatible With ONT's Burden
                To Present Clear And Convincing Evidence Of An
                Enablement Violation ................................................................................8

    D.      Alternatively, The Court Should Grant A New Trial On Enablement
            Of The '056 Patent .................................................................................................11

    E.      The Court Should Grant A New Trial On All Claims Due To ONT's
            Prejudicial Statements Amidst The Coronavirus Crisis ..................................12

        1.      ONT's Opening Statement Was An Over-The-Top
                Exploitation Of The Coronavirus Crisis That Clearly
                Violated Two Court Orders ....................................................................13

        2.      ONT's Closing Argument Improperly Leveraged Its
                Improper Opening And Violated This Court's Limine Orders
                Repeatedly ................................................................................................19

III.    CONCLUSION ..........................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alcon Research Ltd. v. Barr Laboratories, Inc.*,
  745 F.3d 1180 (Fed. Cir. 2014)......................................................................2, 4, 11

*American Hoist & Derrick Co. v. Sowa & Sons, Inc.*,
  725 F.2d 1350 (Fed. Cir. 1984)................................................................................6

*Blanche Rd. Corp. v. Bensalem Twp.*,
  57 F.3d 253 (3d Cir. 1995)............................................................................12, 14

*Fineman v. Armstrong World Indus., Inc.*,
  980 F.2d 171 (3d Cir. 1992).................................................................................12

*Hybritech, Inc. v. Monoclonal Antibodies, Inc.*,
  802 F.2d 1367 (Fed. Cir. 1986)...............................................................................3

*Koito Mfg. Co., Ltd. v. Turn-Key-Tech, LLC*,
  381 F.3d 1142 (Fed. Cir. 2004)...........................................................................2, 3

*M2M Sols. LLC v. Sierra Wireless Am., Inc.*
  No. CV 12-30-RGA, 2016 WL 1298961 (D. Del. Mar. 31, 2016)............................5

*McMunn v. Babcock & Wilcox Power Generation Group*,
  869 F.3d 246 (3d Cir. 2017)....................................................................................2

*O'Rear v. Fruehauf Corp.*,
  554 F.2d 1304 (5th Cir. 1977) ...............................................................................17

*Reed v. Phila., Bethlehem & N.E. R.R. Co.*,
  939 F.2d 128 (3d Cir.1991)....................................................................................18

*Schmidt v. Skolas*,
  770 F.3d 241 (3d Cir. 2014)...................................................................................18

*Streck, Inc. v. Research & Diagnostic Systems*,
  665 F.3d 1269 (Fed. Cir. 2012)................................................................................2

*Takeda Pharmaceutical Co. v. Zydus Pharmaceuticals*,
  743 F.3d 1359 (Fed. Cir. 2014)................................................................................2

*Union Carbide Chemical & Plastic Tech v. Shell Oil*,
  308 F.3d 1167 (Fed. Cir. 2002)..................................................................... *passim*

ii

*Waddington N. Am., Inc. v. Sabert Corp.*,
   No. CIV.A. 09-4883 GEB, 2011 WL 3444150 (D.N.J. Aug. 5, 2011) ...................................19

*In re Wands*,
   858 F.2d 731 (Fed.Cir.1988)...........................................................................................3, 5

*WBIP, LLC v. Kohler Co.*,
   829 F.3d 1317 (Fed. Cir. 2016)........................................................................................4, 5

**Other Authorities**

FRCP 50...............................................................................................................................2

FRCP 59...............................................................................................................................2

## I.      INTRODUCTION

The jury verdict is unsustainable and can only be seen as the distorted product of improper and inflammatory arguments designed to exploit the most severe public health crisis this country has faced in more than a century.

To begin with, the jury remarkably found that the '400 and '323 patents were not enabled based on the testimony of an ONT expert who answered only *two* questions about the entire topic during direct examination.   On cross, he said nothing to defend his two conclusory answers. Rather, he admitted that he had no understanding of the legal standard and could not recall his primary evidence on the issue.   He even confirmed that a skilled artisan ***could*** practice the claimed invention with knowledge of the prior art.   While the jury's non-enablement finding on the '400 and '323 patents is peculiar enough, the jury made an equally erroneous non-enablement finding for the '056 patent despite numerous unambiguous admissions from ONT's expert that preclude ONT from meeting its burden under the clear and convincing standard.

Sadly, the explanation for the jury's distorted verdict is too clear.   From the earliest moments of trial, ONT aggressively sought to plant in jurors' minds that a verdict against ONT threatened to strip the world of a supposedly critical tool in the fight against the Coronavirus. ONT sought to demonize PacBio as a threat to public safety because of patent assertions that supposedly were intended to "exclude" life-saving products.   ONT's irrelevant appeals to emotion amidst a crisis were already found to have violated multiple *limine* orders.   As the Coronavirus pandemic ballooned over the course of trial, so too did the indelible impact of ONT's *limine* order violations.   The Coronavirus panic was so ominous that the topic could not even be broached.   While the jury's findings warrant JMOL of liability for three of the patents, the unique circumstances necessitate a new trial altogether for the remaining issues.

1

## II.    ARGUMENT

The Court should grant JMOL under FRCP 50 and a new trial under FRCP 59 for the reasons set forth below.

### A.    The Court Should Grant JMOL That The '400 And '323 Patents Are Not Invalid And ONT Is Liable For Infringement

The jury found that the claims-in-suit of PacBio's '400 and '323 Patents were infringed and rejected ONT's written description challenge.    But the jury found the claims invalid for a supposed lack of enablement.    The jury's enablement verdict fails as a matter of law and the Court should grant JMOL that ONT is liable for infringing those two patents.

"Because patents are presumed valid, lack of enablement must be shown by clear and convincing evidence."    *Streck, Inc. v. Research & Diagnostic Systems*, 665 F.3d 1269, 1288 (Fed. Cir. 2012).    Here, there is no legally sufficient basis to conclude that ONT carried its burden of proving an enablement violation with clear and convincing evidence.

Expert testimony is generally necessary for a party to prove lack of enablement.    *McMunn v. Babcock & Wilcox Power Generation Group*, 869 F.3d 246, 267 (3d Cir. 2017) ("Expert evidence is generally required when an issue is beyond the ken of a lay jury.").    Yet, an expert's "conclusory statements" are insufficient to carry the heavy burden of invalidating a patent for an enablement violation.    *Takeda Pharmaceutical Co. v. Zydus Pharmaceuticals*, 743 F.3d 1359, 1369 (Fed. Cir. 2014); *Alcon Research Ltd. v. Barr Laboratories, Inc.*, 745 F.3d 1180, 1189 (Fed. Cir. 2014) ("unsubstantiated conclusory" testimony insufficient to support an enablement violation); *Union Carbide Chemical & Plastic Tech v. Shell Oil,* 308 F.3d 1167, 1186 (Fed. Cir. 2002) ("general and vague" expert testimony insufficient to support nonenablement verdict); *Koito Mfg. Co., Ltd. v. Turn-Key-Tech, LLC*, 381 F.3d 1142, 1152 (Fed. Cir. 2004) ("General and conclusory testimony, such as that provided by Dr. Kazmer in this case, does not suffice as

2

substantial evidence of invalidity."). The failure to carry the heavy burden to prove an enablement violation warrants a grant of JMOL. *See, e.g.*, *Koito*, 381 F.3d at 1156 (granting JMOL because "Koito failed to shoulder its burden of showing lack of enablement by clear and convincing evidence before the jury."). As shown below, ONT's evidence does not satisfy the clear and convincing standard.

### 1. Dr. Goldman's Testimony Is Conclusory

ONT's expert, Dr. Goldman, barely touched the topic of enablement on direct examination. He answered only two questions on the subject and his testimony was superficial and conclusory:

> **Q.** Is there any teaching in the patent as to how to determine N if N is less than all the bases?
>
> **A.** No, there is not.
>
> ***
>
> **Q.** Could you summarize your opinions on validity?
>
> **A.** On validity, given my – taking the assumption that PacBio and Dr. Dessimoz did that N is not all the bases in the pore affecting the current, then the patent – the patents are then invalid. There is no recipe in there that describes or enables how you would determine N.

D.I. 491 1113:11-13, 1113:18-23.

Dr. Goldman's fleeting and conclusory testimony is wholly insufficient. A "recipe" is not required to satisfy the enablement requirement because the extent and nature of the required disclosure varies based on a bevy of factors. *See Hybritech, Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1384 (Fed. Cir. 1986) ("a patent need not teach, and preferably omits, what is well known in the art"); *In re Wands*, 858 F.2d 731, 737 (Fed.Cir.1988) (listing eight enablement factors). This is especially true for the ***unclaimed*** process of calculating "N." *Union Carbide,* 308 F.3d at 1186 ("only the claimed invention need be enabled"). But Dr. Goldman superficially assumed a "recipe" is somehow required for an unclaimed element without explanation or analysis.

Dr. Goldman did not analyze what skilled artisans would know about determining N or

3

why it would be unduly difficult to determine empirically the number of bases that affect the measurement of the current.   He did not address the portion of the specification that sets forth not only how many (N) bases contribute to the current measurement, but the percentage of each of the N base's contribution.   *See* JTX1 at 40:12-24.   Dr. Goldman's conclusory assertions ignore his testimony that, whether a base affects the current measurement to qualify as part of N, depends on whether that base's contribution meaningfully affects the results at the end of the process, which is base-calling.   D.I. 491 1124:25-1125:10.   He does not explain why it would be hard to determine how many bases contribute by testing to see if they affect base calling.   He did not address the quantity of experimentation it would take to calculate N, the prior art, the predictability of calculating N, or the skill of the art on this issue, to name a few necessary but omitted considerations.   *See Alcon*, 745 F.3d at 1188 ("To prove that a claim is invalid for lack of enablement, a challenger ***must show*** by clear and convincing evidence that a person of ordinary skill in the art would not be able to practice the claimed invention without 'undue experimentation'").[1]   In short, Dr. Goldman's fragmentary testimony does not approach the clear and convincing evidence standard.

The Federal Circuit's opinion in *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1338-39 (Fed. Cir. 2016) is particularly instructive, even though it addresses written description.   There, the Federal Circuit held that three general questions to an expert that resulted in an expert conclusion that there was no disclosure in the patent of a particular element of the invention is insufficient to carry the burden of clear and convincing proof.   *Id.* at 1339 ("Under our precedent, '[g]eneral and conclusory testimony ... does not suffice as substantial evidence of invalidity.' This is precisely the type of evidence that Kohler submitted to the jury in this case.").   The comparison between

---

[1]   Emphasis supplied unless otherwise specified.

the showing in *WBIP* and here is striking.

In sum, ONT's insufficient showing calls to mind the analysis in *M2M Sols. LLC v. Sierra Wireless Am., Inc.* No. CV 12-30-RGA, 2016 WL 1298961, at *4 (D. Del. Mar. 31, 2016): "Defendants offer nothing more than vague references to the enablement standard, without any discussion of the state of the art, the relative skill and understanding of a POSITA, the amount of experimentation that would be necessary, or any other relevant *Wands* factors. Defendants' cursory argument plainly fails to establish by clear and convincing evidence the underlying facts necessary to determine that the '010 patent is invalid for lack of enablement."

### 2. Cross-Examination Confirmed There Is No Substance To Dr. Goldman's Enablement Testimony

On cross, Dr. Goldman could not identify any basis for the jury to find an enablement violation. He did not have an opinion of "unpredictability" relating to enablement at all, much less regarding the calculation of N. D.I. 491 1130:24-1131:6. Nor did he opine on the "quantity of experimentation" that would be necessary to make or use the invention. *Id.* 1131:7-10.

Indeed, Dr. Goldman was ignorant of the eight factors set forth in the Court's jury instructions (D.I. 492 1554:20-1555:8). D.I. 491 1131:14 ("I don't recall eight factors."). He was ignorant of any test for enablement. *Id.* 1131:11-19. Dr. Goldman claimed he could not even identify the primary evidence supporting his enablement testimony:

> **Q.** Do you know what your primary evidence was for your opinions on written description?
>
> **A.** I don't recall.
>
> **Q.** And for enablement?
>
> **A.** I don't recall.

*Id.* 1134:25-1135:4.

In addition, Dr. Goldman admitted that a person skilled in the art in 2009 would be able to

*successfully* perform the method of claim 1 of the '400 Patent, if the person had a prior art reference (the Akeson grant) regarding nanopore sequencing available.   *Id.* 1134:2-9.   As this Court instructed the jury without objection, "a patent need not expressly state information that skilled persons would be likely to know or could obtain at the time of the claimed invention." D.I. 492 1554:9-11.   Dr. Goldman's admission establishes that skilled artisans in 2009 could perform all steps of the claimed method and thus is flatly inconsistent with the verdict.

### 3.   Skilled Artisans Would Have Been Able To Determine N With The Benefit Of The Patent

The burden of proof is on the attacker to prove invalidity, and this burden never shifts. *American Hoist & Derrick Co. v. Sowa & Sons, Inc.,* 725 F.2d 1350, 1359 (Fed. Cir. 1984).   And Dr. Goldman's fragmentary and general contention is insufficient to carry that burden. Nevertheless, it is worth explaining that the '400 and '323 Patents do disclose N and skilled artisans would know how to calculate N to show how superficial Dr. Goldman's testimony was and the evidence he ignored.

As explained above, Dr. Goldman admitted that the invention could be made and used based on the disclosures of the patents and the prior art.   That alone confirms enablement. Beyond that, the patents themselves exemplify that using a homopolymer (all bases are the same), a skilled artisan can "derive" empirically how many (N) bases contribute to the current measurements and even the percentage of their contribution.   PTX1 at 40:12-24 ("allowing the amount by which each position contributes to the current level (e.g. by comparing AAA to TAA to AAT) to be derived") and ("where it is measured that the nucleotide in the center of the nanopore contributes to 75% of the current blockage, the previous nucleotide (−1) contributes 15%, and the subsequent nucleotide (+1) contributes 10%").   Dr. Goldman ignored this evidence in the specification when answering the only two questions he was asked about enablement on direct.

In addition, although the parties' disputed the infringement conclusion, each side was able to calculate the number of bases that contribute without complaint as to the difficulty of doing so. In sum, ONT has not come close to meeting its heavy burden of proof.

**B.      Alternatively, The Court Should Grant A New Trial On Enablement Of The '400/'323 Patents**

In *Union Carbide*, the Federal Circuit affirmed a grant of a new trial on a jury verdict finding an enablement violation.   308 F.3d at 1186.   There, as here, the verdict was based on "general and vague" expert testimony and thus was against the great weight of evidence under the Third Circuit standard.   In any event, for all the reasons set forth above, in the alternative the Court should grant a new trial on enablement.   If the Court grants JMOL of liability, it should grant a new trial on willfulness and damages to determine the right remedy.

**C.      The Court Should Grant JMOL That Claim 2 And 12 Of The '056 Patent Are Not Invalid And That ONT Is Liable For Infringement**

The jury found that Claims 2 and 12 of PacBio's '056 Patent were infringed and rejected ONT's written description and indefiniteness challenges.   But the jury found them invalid for a supposed lack of enablement.   The jury's enablement verdict fails as a matter of law and the Court should grant JMOL that claims 2 and 12 are not invalid and that ONT is liable for infringing them.

There are two fundamental problems with ONT's enablement showing.   First, Dr. Ha's admissions on cross-examination cannot be reconciled with a showing of ***clear and convincing*** evidence of an enablement violation.   This is particularly true because his go-forward testimony was conclusory.   Second, Dr. Ha failed to describe the amount of experimentation that would have to be performed to use the inventions and did not know whether the experimentation was "undue" because he had not considered that topic in his report.   ONT desperately attempted to elicit testimony from Dr. Ha on that indispensable element of its enablement defense three times and the Court precluded it each time because he had not considered it in developing his opinions

in his report.

### 1. Dr. Ha's Admissions Are Incompatible With ONT's Burden To Present Clear And Convincing Evidence Of An Enablement Violation

Dr. Ha testified that his enablement argument was based on the "whereby" clause of what he called claim step 1(e):   "whereby the translocating enzyme and the reaction conditions are selected such that the translocating enzyme exhibits two kinetic steps wherein each of the kinetic steps has a rate constant, and the ratio of the rate constants of the kinetic steps is from 10:1 to 1:10."   D.I. 491 1211:10-21; JTX 3 58:57-61.

During cross-examination Dr. Ha admitted that a person of ordinary skill in the art **would** know how to perform step 1(e) in 2009:

**Q.**   So a person of ordinary skill the art in 2009, let's start with Liao, with Liao in front of them, would be able to perform step 1(e) of the – of claim 1 of the '056 patent if they knew that's what they wanted to do?

**A.**   To selecting the conditions that allow these rates, yes, because conditions are given in these references.

A person of ordinary skill in art would be able to select the reaction conditions that, you know, match the ratio because the ratio conditions are given in the references.

***

**Q.**   But you'll agree that a person of ordinary skill in the art in 2009 would know how to perform step 1(e) of the '056 patent if they had the benefit of the prior art literature; is that correct? Isn't that true?

**A.**   By itself?   Yes.

D.I. 491 1212:18-1213:4; *id.* 1214:23-1215:2.   These admissions alone are inconsistent with a clear and convincing evidence finding of the alleged enablement violation.

But that is not all.   Dr. Ha asserted two problems with the whereby clause.   He argued that a skilled artisan practicing step 1(e) would have issues relating to the: (1) reaction conditions and (2) enzyme.   *Id.* 1159:13-1160:2.   As shown below, additional admissions by Dr. Ha prevent him from establishing these assertions by clear and convincing proof.

8

Regarding reaction conditions, Dr. Ha's above-quoted testimony confirms that persons of ordinary skill in 2009 indeed "would be able to select the reaction conditions" as required by the whereby clause.   Dr. Ha removed any doubt that selecting the claimed reaction conditions as required by step 1(e) was within the ordinary skill in the art in 2009 and that this was *his* opinion:

> **Q.**     A person of ordinary skill in the art in 2009 would know how to perform step 1(e) of the '056 patent if they had the benefit of the literature, the prior art literature, correct?
>
> **A.**     Step 1(e), which I agree to the extent that step 1(e) is selecting the reaction conditions.

*Id.* 1215:12-17.   It is impossible to harmonize this admission with Dr. Ha's enablement contentions regarding reaction conditions on direct examination.   And the patent and Dr. McHenry's testimony reinforce why Dr. Ha's admissions follow from the overwhelming evidence. *See, e.g.*, JTX003 at 32:16-39:16 (seven columns of text in the '056 patent regarding reaction conditions, including buffers, pH, additives, cofactors, temperature, and solvents); D.I. 492 1421:4-1428:2 (PacBio's expert explains at length why the disclosure of reaction conditions in the '056 patent is sufficient).

Regarding enzymes, Dr. Ha admitted that he had failed to consider critical evidence.   Dr. Ha was explicit that a person skilled in the art would approach the '056 Patent knowing about the prior art reference Akeson 1 [PTX701].   D.I. 491 1210:20-23.   He admitted that "Akeson references a lot of information about enzymes for use in nanopores." *Id.* 1206:15-18.   He also admitted that Akeson 1 broadly disclosed a large variety of enzymes as molecular motors for nanopore sequencing, including polymerases and helicases. *Id.* 1206:22-1207:2.   He admitted Akeson 1 broadly claimed as an invention the entire class of polymerases and helicases. *Id.* 1209:9-15.   Such admissions are unsurprising in view of the testimony of Dr. Akeson himself, who explained that he had patented virtually all relevant enzymes for all types of nanopore

sequencing before the filing of the '056 patent.    D.I. 490 974:4-975:9.    His own patent avowed

that the skilled artisan would know how to make enzymes work for nanopore sequencing.[2]   *Id.*

Importantly, Dr. Ha admitted that Akeson 1 taught in 2005 that persons "of ordinary skill

would be able to identify the appropriate molecular motors useful according to the particular

application they have."   Tr. 1207:3-15.   Dr. Ha testified that he did not even ***consider*** this

information in formulating his enablement opinion relating to enzymes:

> **Q.**    Did you consider this information about enzymes for nanopore sequencing
> from Dr. Akeson's patent application when you formulated your
> enablement opinion?
>
> **A.**    No.

D.I. 491 1208:10-16.    Dr. Ha's enzyme opinions cannot be sufficient if he did not even consider

Akeson 1's teachings, including that skilled artisans in the nanopore area would know how to

select enzymes for "the particular application" they are interested in.    This is especially true

because he agreed that skilled artisans approaching the '056 Patent would know about Akeson 1.

Admissions such as Dr. Ha's are inconsistent with the required clear and convincing proof

to invalidate a patent.    In *Nobelpharma AB v. Implant Innovations, Inc.,* the Federal Circuit held

that an adverse witness' admission can even ***carry*** a burden of proof mandating a JMOL grant.

---

[2] In the same vein, ONT attempted to obliquely support its position on the '056 patent with
testimony from various witnesses that nanopore sequencing and the use of enzymes for nanopore
sequencing was impossible in the 2009 time frame.    *See* D.I. 491 1261:8-15; 1031:5-18, 1050:17-
20, 1051:3-11; D.I. 490 992:9-17.    Yet, the evidence was that the basic nanopore sequencing
approach had been patented long before the '056 patent and that ONT touts those patents on its
website as being pertinent to its product.    *See* D.I. 489 631:23-636:20; D.I. 490 964:7-965:5.
This totally undermines ONT's trial assertions that nanopore sequencing was impossible.
Indeed, such assertions are radically at odds with ONT's pre-trial position that the basics of
nanopore sequencing were routine long before the '056 patent.    *See, e.g.*, D.I. 45 in -1353 at 6:17-
7:14.    Insofar as ONT would have argued that the '400 and '323 patents are not enabled based on
the alleged impossibility of carrying out nanopore sequencing, such arguments would fail for the
same reasons.

141 F.3d 1059, 1065 (Fed. Cir. 1998).    Here, not only is the heavy burden on ONT, but Dr. Ha neither recanted his admissions, nor explained how they can be harmonized with his assertions in his direct examination.    *Union Carbide*, 308 F.3d at 1186 (cross-examination admissions undermine direct examination testimony causing the verdict to be overturned).    JMOL is warranted on this ground.

As an independent ground for JMOL, Dr. Ha never addressed the extent of experimentation or other key factors that would support a finding of "undue experimentation."    *See Alcon,* 745 F.3d at 1189 (proof of the difficulty of the experimentation is required to prove enablement).    Dr. Ha never considered whether the experimentation was undue and on cross-examination admitted he did ***not*** know:

> **Q.**    Would a person of ordinary skill in the art in 2009 be capable of arriving at the reaction conditions under which a translocating enzyme would exhibit the claimed ratios for the two kinetic steps without undue experimentation.
>
> **A.**    I don't know the answer to that.

D.I. 491 1202:22-1203:2.

Aware of this fundamental shortcoming of Dr. Ha's opinion, ONT attempted unsuccessfully three different times to ask him about "the amount of experimentation" and "how much work" it would take to practice the invention or the unpredictability of such experimentation. Each time the Court upheld the objection or the question was abandoned.    *Id.* 1176:2-1177:5, 1182:4-1183:3, 1183:9-1184:2.    With no evidence of undue experimentation in the record, the jury's finding of an enablement violation cannot be sustained for this independent reason.

### D.    Alternatively, The Court Should Grant A New Trial On Enablement Of The '056 Patent

In view of the unambiguous admissions described above, ONT's proffered expert testimony on enablement cannot justify the jury's verdict.    *See Union Carbide*, 308 F.3d at 1186

(relying on expert admissions during cross-examination in granting new trial on enablement).

Accordingly, in the alternative the Court should grant a new trial on enablement.   If the Court

grants JMOL, it should grant a new trial on willfulness and damages.

### E.   The Court Should Grant A New Trial On All Claims Due To ONT's Prejudicial Statements Amidst The Coronavirus Crisis

A new trial is warranted when "improper assertions have made it 'reasonably probable'

that the verdict was influenced by prejudicial statements." *Fineman v. Armstrong World Indus.,*

*Inc.*, 980 F.2d 171, 207 (3d Cir. 1992); *Blanche Rd. Corp. v. Bensalem Twp.*, 57 F.3d 253, 264 (3d

Cir. 1995).   This is a classic example of such a case.

Defendants' opening statement argued in intricate detail the crucial role that ONT's

products supposedly played in helping to address the Coronavirus crisis.   A review of the

transcript should shock any reader about the over-the-top and lengthy extent to which counsel

addressed the irrelevant but inflammatory subject of the Coronavirus crisis.   ONT's outrageous

exploitation of a world health crisis was compounded by counsel's high-pitched argument that

PacBio would use this case to interfere with ONT's supposed effort to fight the Coronavirus

scourge.   Indeed, ONT argued that this was part of an on-going and repeated legal effort by

PacBio to exclude ONT's products from the market where they can help to address public health

crises.   This Court already found that this is what ONT's counsel wrongly did, and that this

violated an Order specifically directing him ***not*** to do it.   Nor was this an isolated violation of a

*limine* order; ONT's counsel also violated a different order that implied that the outcome of prior

actions should control this action and represented repeated attempts by PacBio to block ONT from

selling its products.

Defendants' gratuitous exploitation of the Coronavirus crisis was outrageous from the start,

but as the trial continued to the jury deliberations, the Coronavirus crisis became an outright

12

national emergency unlike any in living memory.   The streets of Wilmington were desolate and the sense of the apocalypse real.   The Coronavirus topic was such a third-rail that after ONT's hyperbolic opening no one could even mention it.   As a painful consequence, PacBio could not meaningfully counter the false and inflammatory picture that ONT had painted in its opening argument that ONT's products were a central tool in the fight against the plague that appeared to be imminently descending on Delaware and the rest of the country.

To cap it off, in closing argument, ONT asserted that PacBio was attempting to block and exclude ONT repetitively as its central theme.   ONT used the word "exclude" 13 times and "block" 11 times as a mantra.   ONT intended to and did characterize PacBio as pursuing a legal campaign to interfere with ONT's products.   This was intended to and did portray PacBio as threatening to interfere with public health and there is at least a "reasonable probability" that the verdict was influenced by ONT's prejudicial approach to the trial.

### 1.   ONT's Opening Statement Was An Over-The-Top Exploitation Of The Coronavirus Crisis That Clearly Violated Two Court Orders

PacBio brought its Motion *in limine* No. 3 to prevent ONT from unfairly inflaming the jury by suggesting that a verdict in PacBio's favor would "hurt scientific research, or *exclude* nanopore sequencing devices from the United States." D.I. 448-1 at 380. As PacBio explained, "fear-mongering" regarding the consequences of this case is unduly prejudicial and does nothing to "make any fact that is in dispute on the merits more or less likely to be true." *Id.* at 426.

The Court granted PacBio's motion, explaining that "it would be inappropriate to put before the jury evidence or argument about the potential impact of a verdict in favor of PacBio." D.I. 460 at 2.   The Court explained that this is "not relevant to any issue the jury will decide" and precluded ONT from arguing that PacBio's claims may interfere with the availability of ONT's products.   *Id.*   Ultimately, the Court explained that the ban on ONT's argument was needed

13

because a suggestion that PacBio's claims could lead to "slower medical research" may "create an **unacceptable risk of unfair prejudice** (as the jury might be deterred from returning a verdict in favor of PacBio even if it finds PacBio has met its burden of proof)." *Id.*

As it turned out, ONT did not waste any time before violating this Court's Order. In opening statement, ONT argued that PacBio has in the past and is now using this litigation to try to exclude nanopore sequencing: "Now, this isn't the first time that PacBio has tried to use its patents to exclude nanopore sequencing." D.I. 487 145:4-5. To drive the point home, in his next sentence ONT's counsel stated that "PacBio has tried twice before to use its patents to take Oxford off the market." *Id.* 145:6-7. This was a theme of ONT's opening statement. *See id.* 165:11-12 ("PacBio made its first attempt to use its patents to keep U.S. Oxford's products off the market.").

This Court explained that "defendants' opening statement violated my clear ruling on motion *in limine* number three." D.I. 488 292:21-23. The Court recognized that ONT had egregiously implied that PacBio's claims could interfere with the medical community's response to the Coronavirus crisis: "any implication that this jury should be at all concerned most egregiously about whether the fight against Coronavirus that we're all so focused on is at all at issue in this trial, and that that should be weighing on the heads of this jury is in violation of motion *in limine* three, my ruling on that, and it's improper and requires a cure." *Id.* 293:1-12. The Court also acknowledged that given the Coronavirus panic, there was a "real risk of a verdict here not being one that would reflect the [] application of the law to the evidence and I don't want to go down that path." *Id.* 293:22-294:5.

A review of the transcript confirms how indelible and over-the-top ONT's contumacious scare tactics actually were:

> Now, this isn't the first time that **PacBio has tried to use its patents to exclude nanopore sequencing**. PacBio has tried twice before to use its patents to take

Oxford off the market, and they failed.    Oxford Nanopore did all the work to make nanopore sequencing a reality, to make a product that is changing lives as we speak, whether *it's helping people fighting the coronavirus outbreak*, characterizing cancers, keeping food safer, or understanding a dangerous species.

*\*\*\**

Now, *so what does MinION mean to you*? And I'd like to tell you a short story. On New Year's Eve 20[19], the public health authorities in China sent a rapid response team to Wuhan to investigate a cluster of pneumonia cases. The *Chinese authorities used nanopore sequencing to sequence and isolate what turned out to be a previously unknown Coronavirus* in samples from patients who were suffering from this pneumonia.

The *Coronavirus identified with the help of one of these* was the novel strain, now known to be the cause of COVID-19. Within a few weeks there were a few cases and a handful of *deaths*.

And Zoe McDougall will tell you in a couple of days, in late January, the CDC, the Center for Disease Control, used one of these, *used nanopore sequencing to understand the first cases of Coronavirus* in the U.S. and at the end of January, following an intense period of working with public health authorities in Asia, Europe and the U.S., Oxford sent an additional 200 of these. And you can see them. That is the box that they sent to China. They sent 200 MinIONs to China. Now, that wasn't without some logistical difficulties because all commercial flights had been canceled, but Oxford made it happen. *Only Oxford sequencers* like this could be rapidly assembled and *distributed to China* in the many labs sequencing samples around the country, and now *these MinIONs are in the hands of scientists and public health officials in China* who are on the ground in realtime *monitoring the spread of the virus and working desperately to control it*.    MinION's portability, high throughput and ease of use *allows you to detect the virus three times faster* than the other available commercial sequencers, like the Illumina sequencers and ABI sequencers. MinION is being used by scientists in China, the U.S., Canada, the U.K., the Netherlands, Australia, Brazil, the United Arab Emirates, Belgium, to detect the virus and monitor and spread. Indeed, sequencing information generated by one of these *has been critical in efforts to develop a vaccine*.

*\*\*\**

Oxford nanopore technology is advancing important science and public health initiatives with an impact that will improve *the life of your families*.

*\*\*\**

This DNA *Go Pack allows the CDC to rapidly deploy and track the spread of infectious disease.*

*\*\*\**

So now we've talked about patents, and this is a patent case, and as you saw in the video earlier today, a patent is a right to exclude others from doing what the patent claims. But a patent has a price, and that price is very high. *The price is high because an issued patent means that all of us have lost the right to do something, lost the right to do what the patent claims.*

15

D.I. 487 145:4-12, 154:14-155:18, 156:2-5, 156:15-17, 157:1-7.   Notably, after trial, ONT's lead counsel acknowledged that he had violated the Court's *limine* order, stating that "[a]s *we made clear at trial,* this was an attempt to hamper our client's success in the market *at a time when this technology is needed more than ever*."   Exh. A.

ONT's inflammatory discussion in its opening argument of Coronavirus, death, families, go packs, Wuhan, the desperate effort to control the virus, the purported indispensability of the ONT's sequencers to the fight against the virus and development of a vaccine, PacBio's continued efforts to use its patents to take ONT off the market and the "high price of patents" is prejudicial beyond repair.   ONT's outrageous violation of this Court's *Limine* Order No. 3 is exacerbated by four compounding factors.

**First**, ONT's supposed role in the forefront of the deadly Coronavirus battle and PacBio's supposed plan to interfere with that has essentially no relevance to the issues the jury is supposed to decide in a patent trial.   Featuring Coronavirus as the heart of its opening was thus gratuitous and totally unjustified.

**Second**, given the *limine* briefing and this Court's definitive Order, the violation had to be intentional.   It was obvious that ONT's opening argument was scripted and rehearsed.   ONT has never denied that.   The media understood exactly what ONT intended.   For example, a Law360 article on the opening of the trial parroted ONT's jury message in the very first sentence:   an "attorney for developers of a DNA tool recently used to track the coronavirus in China told jurors in a federal patent trial in Delaware on Monday that Pacific Biosciences is using invalid infringement claims to derail competition in an important field of science."   D.I. 469-2 ("Patent Trial Opens Over DNA Tool Used To ID Coronavirus").

The purpose of a *limine* order is "prohibiting opposing counsel from mentioning the

existence of, alluding to, or offering evidence on matters so highly prejudicial to the moving party that a timely motion to strike or an instruction by the court to the jury to disregard the offending matter cannot overcome its prejudicial influence on the jurors' minds." *O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1306 n.1 (5th Cir. 1977) (quoting Commentary, The Motion in Limine: Pretrial Trump Card in Civil Litigation, 27 U.Fla.Law.Rev. 531 (1975)).   ONT's intentional violations had exactly the incurable prejudicial effect that the Order was designed to protect against.

*Third*, ONT's clear violation of this Court's Order on *limine* No. 3 was accompanied by another blatant *limine* Order violation.   ONT had been ordered to reference the ITC case only to establish ONT's "state of mind and their attitude toward the intellectual property rights of the Plaintiff."   D.I. 486 at 36:1-5.   In flagrant disregard of this Court's Order, ONT cynically featured PacBio's loss at the ITC as an unsuccessful effort to block the availability of ONT's sequencing products without even pretending to relate it to ONT's state of mind.   D.I. 488 at 275:15-16 (Court: "not once did defense counsel draw any link between state of mind and the ITC"); 276:9-11 (Court: "at least make one allusion to willfulness in then a very lengthy opening statement, and none of that happened.").   This was done after the Court warned ONT at sidebar that he was walking a fine line.   D.I. 486 at 167:19.   This magnified the prejudice of ONT's argument that PacBio is attempting to use the legal system to block the availability of ONT's Coronavirus-fighting products through an on-going course of conduct including this case and prior litigation.

*Fourth*, there is not and never was evidence to support ONT's fantasy story.   ONT's investor relations spokesperson Ms. McDougall does not have personal knowledge of how the Chinese government used ONT products or about its heavily shrouded early Wuhan reaction to

the Coronavirus outbreak.   She does not have personal knowledge whether ONT's products were used in connection with the victims in China or the first victims in the US, whether they are critical to develop a non-existent vaccine, are in a go-pack for quick deployment by the CDC for Coronavirus identification, or any of the other many specific assertions made by ONT.   She does not know that ONT's sequencers are three times better than other sequencers at addressing the Coronavirus issues.   No such evidence was plausibly known by Ms. McDougall, was disclosed in discovery, tendered as an offer of proof, or otherwise properly identified in this case.   Telling this long tale in opening argument was squarely improper and highly prejudicial.   *See Reed v. Phila., Bethlehem & N.E. R.R. Co.*, 939 F.2d 128, 133 (3d Cir.1991) ("The prohibition against use in argument of evidence not in the record is straightforward.").   The Third Circuit has recognized the toxic combination of *limine* violations and argument based on evidence not in the record.   *Id.* ("the situation is exacerbated because the same facts that the defense presented to the jury had been explicitly ruled inadmissible at an *in limine* hearing").

Unfortunately, after openings, as the Coronavirus crisis deepened, the topic was so radioactive that PacBio could not counteract ONT's opening argument by showing that its factual assertions were not true and explain why they were irrelevant.   Nor could it show that PacBio's sequencing systems in the United States are the go-to system used for infectious disease sequencing to the same degree.   Indeed, the Court actively discouraged any such evidence or argument, which would have been imprudent to discuss before the jury anyway given how ominous the Coronavirus crisis had become during the course of the trial.   *See, e.g.,* D.I. 489 at 863:23–864:15 (denying request to mention coronavirus and noting that "there is a significant 403 concern in any event given that we can bet that the word 'coronavirus' is on everybody's mind in

the courtroom and probably in the jury"); Exhs. B-D.[3]   The simple curative instruction given by

the Court was insufficient to remove the severe taint of ONT's opening argument, particularly

because PacBio did not have an opportunity to explain that there was no evidence supporting

ONT's Coronavirus story.   *See Waddington N. Am., Inc. v. Sabert Corp*., No. CIV.A. 09-4883

GEB, 2011 WL 3444150 (D.N.J. Aug. 5, 2011) (ordering new trial in part because of motion *in

limine* violation and stating that counsel "should not have had to try to play 'damage control' with

[excluded] testimony" since "[t]he testimony was excluded because that 'damage control' was

likely to fail, and the prejudice of the testimony—in encouraging the jury to exclusively rely on

irrelevant evidence—was likely to remain").   Any further discussion of Coronavirus (even if it

had been permitted by the Court), and ONT's supposed starring role in fighting the virus, would

only have reminded the jury of ONT's extremely prejudicial opening presentation.

### 2.   ONT's Closing Argument Improperly Leveraged Its Improper Opening And Violated This Court's Limine Orders Repeatedly

Notwithstanding *limine* Order No. 3 and ONT's adjudged violation of that Order, the

unabashed theme of ONT's closing was that PacBio's strategy is to use its IP to block and exclude

ONT's Coronavirus-fighting products.   This exploited and leveraged ONT's inflammatory

opening argument that had demonized PacBio.   ONT's mantra was that PacBio's goal was to

"block" and "exclude."   *See, e.g.*, D.I. 293 1614:3-4;1618:8-9; 1618:18-20; 1622:16-18.

ONT's closing argument about PacBio's efforts to block and exclude ONT's sequencers

was not limited to the nature of the patent right.   Rather, ONT argued that PacBio was attempting

to use litigation, including this case, to interfere with the availability of ONT's products,

---

[3]  PacBio requests that the Court take judicial notice of Exhibits B-D, which are the three, escalating emergency declarations issued by the Governor of Delaware during the trial.   *See Schmidt v. Skolas,* 770 F.3d 241, 249 (3d Cir. 2014) (the "court can take judicial notice" of "matters of public record").

consistently using the ***present*** tense.   *Id.* 1614:3-4 ("What do they want to do?   Tangle up, exclude and fool."), 1618:8 ("They file patents to exclude."); 1618:9 ("They file patents to block."), 1618:18-20 ("They don't compete in the marketplace.   They compete by filing patents to block, to tangle up, to exclude and to fool."), 1622:10-11 ("It's not about protecting what we [Pacbio] do, it's about excluding what other people do."); 1622:16-18 ("So this is the world that PacBio lives in. This is their view of IP. Tangle up, exclude, fool, block, track, offensive strategy, plotting, morphing.").

ONT's prejudicial and inflammatory exploitation of the Coronavirus crisis in violation of this Court's order warrants a new trial.   At a minimum, this conduct probably influenced the jury's verdict, which is all that must be shown to warrant a new trial.   At the time of deliberations, the streets and courthouse were deserted amidst the ominous Coronavirus threat.   It was hard for anyone to keep the Coronavirus public health emergency out of their mind.   The jurors' memories and notebooks surely were imprinted with ONT's tale of how its products were crucial to the Coronavirus fight.   And ONT's demonization of PacBio as seeking to block and exclude its products that were supposedly critical to the discovery of a vaccine, among other things, was fresh in mind.   The likely influence on the verdict is illustrated, for example, by the jury's finding of an enablement violation for the '400, '323 and '056 Patents, even though ONT's expert expended only two sentences on the subject and could not even identify any supporting evidence.

## III.      CONCLUSION

For all the foregoing reasons, PacBio asks the Court to enter JMOL that the '400, '323, and '056 patents are not invalid for lack of enablement as described above, and that—as a result of the jury's infringement finding—ONT has infringed those patents.   PacBio also asks the Court to grant a new trial on all four asserted patents in view of ONT's inflammatory, prejudicial, and improper exploitation of the Coronavirus crisis.

20

Dated: April 29, 2020

Respectfully submitted,

FARNAN LLP

/s/ *Brian E. Farnan*

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market Street, 12th Floor
Wilmington, Delaware 19801
Telephone: (302) 777-0300
Facsimile: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Edward R. Reines (admitted *pro hac vice*)
Derek C. Walter (admitted *pro hac vice*)
Robert S. Magee (admitted *pro hac vice*)
Shawn Chi (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000
edward.reines@weil.com
derek.walter@weil.com
robert.magee@weil.com
shawn.chi@weil.com

Stephen Bosco (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682 7054
stephen.bosco@weil.com

Anna Dwyer (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310 8285
anna.dwyer@weil.com

*Attorneys for Plaintiff Pacific Biosciences of*
*California, Inc.*